UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA



FILED
U.S. DIST COURT
...E DIST. OF LA

MAY 30 P 2: 31

_____
DEPUTY CLERK

UNITED STATES

VERSUS

CHARLESTON E. JACKSON

CRIMINAL ACTION

No. 07-263-JJB-SCR

## RULING

Pending before the court is a Motion to Suppress (Doc. 11) filed by Defendant, Charleston E. Jackson. Jackson seeks to suppress evidence seized from his vehicle and from his residence by law enforcement agents. The court held a hearing on this motion on March 5, 2008, and both parties have briefed the issue raised by the court.

## FACTUAL BACKGROUND

Jackson is charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §922(g)(1). The evidence presented at the suppression hearing established the following facts. On June 18, 2007, the Narcotics Division of the Baton Rouge City Police Department received information from two independent confidential informants("CIs")[1] that the defendant had recently returned from Houston, Texas, with a multi-kilo quantity of cocaine. The CIs reported that the Defendant stored the cocaine at his residence on Belcaro Drive in Baton Rouge; the Defendant used rental cars to transport the cocaine and a cellphone to coordinate his narcotics trafficking activities (Tr. 6-7). According to the CIs, the Defendant routinely transported cocaine from his residence to

---

[1] Both CIs had provided reliable information in the past leading to felony arrests. (Tr. 55)

a residence[2] in the Gus Young area of Baton Rouge, usually on a daily basis.

Upon receiving this information on June 18, 2007, Detective White of the Narcotics Division contacted Agent Ladner of the local bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) requesting the ATF's assistance in conducting an investigation of the defendant. (Tr. 6-7) Jointly, they attempted to conduct surveillance of the defendant on June 18th and 19th, but were not able to observe him at his residence or other areas which the officers believed he frequented. Actual surveillance did not occur until June 20, 2007. (Tr. 8) On that day, the agents watched Mr. Jackson exit his house and then followed him while he traveled in a westerly direction, making two[3] short[4] stops. From the testimony of Joseph Day, owner of Mix and Match Body Shop, it is clear that one of the stops was at a body shop. The other stop was either at a residence or a business. It is undisputed that the officers failed to observe the Defendant engaging in any criminal activity at any of the stops. Eventually Mr. Jackson turned onto Acadian Thruway, where the officers stopped him and ordered him from the car. (Tr. 9-11) Defendant complied and exited the car. Subsequently, the officers asked permission to search the car and Defendant gave his consent. While searching the car, the officer seized approximately seven (7) grams of marijuana in the center console, which resulted in Mr. Jackson's arrest. (Tr. 11) Following his arrest, detectives obtained a search warrant

---

[2] According to Agent Ladner, the CIs said that Defendant made stops en route to the Gus Young area. (Tr. 28). Detective White testified that the CIs said that Defendant would take the cocaine to a residence in the Gus Young area. (Tr.55). Because Detective White spoke with the CIs prior to the investigatory stop and Agent Ladner did not, the Court finds Detective White's testimony to be a more accurate account.

[3] Agent Ladner thought Defendant made three or four stops, but could not recall the stops with any degree of certainty. (Tr. 25) When pressed, Detective White could only recall two stops. (Tr.61). Detective White failed to provide any information on the number of stops in his police report.

[4] There is conflicting testimony as to the amount of time spent at each of the two stops. Detective White contends that it was five to ten minutes (Tr.62) and Agent Ladner contends that the stops were one to two minutes long. (Tr. 9).

for Defendant's home. During the search, among other things, approximately three (3) grams of marijuana, marijuana residue and leaves in a garbage bag, and a .40 caliber handgun were found in his home. (Tr. 20, 44)

## ANALYSIS

**I.     VALIDITY OF INVESTIGATORY STOP**

Jackson argues that evidence obtained during the warrantless search of his vehicle should be suppressed because the government lacked reasonable suspicion to make the investigatory stop. He also argues that evidence obtained from his residence pursuant to the search warrant should be suppressed because the government did not have probable cause to obtain the warrant since the investigatory stop was invalid[5].

A brief investigatory stop of a person does not violate the Fourth Amendment if the officer's action is supported by reasonable suspicion based on specific and articulable facts causing him to believe that "criminal activity may be afoot." The court must judge the facts using "an objective standard" and determine whether the officers had reasonable suspicion based on the totality of circumstances. *Terry v. Ohio,* 392 U.S. 1, 21 (U.S. 1968); *U.S. v. Cortez*, 449 U.S. 411, 417 (U.S. 1981).

In this case, the pertinent question is whether the officers had the requisite reasonable suspicion, supported by specific and articulable facts, that criminal activity was afoot. An officer's justification for an investigatory stop, may not rely solely on a "mere hunch." *Terry* at 27. The Fifth Circuit has stated in *United States v. Roch*, 5 F.3d 894, 898 (5th Cir. 1993), "reasonable suspicion

---

[5] The search warrant obtained for the Defendant's home was issued based in part, on an affidavit containing information and materials obtained from the investigatory stop of Jackson on Acadian Thruway earlier in the day.

may be based on information supplied by a CI if the information possesses indicia of reliability." The indicia of reliability is based on whether the information was current, whether the informants had provided reliable information[6] in the past leading to prior arrests, and whether the observations made by the detectives match the CI's tips.

Jackson contends that the officers merely had a "hunch" and therefore they lacked reasonable suspicion. Jackson argues that the CI's tips were not sufficiently corroborated under the circumstances of this case. Jackson points to the testimony of the detectives conceding that they never saw Jackson engage in any criminal activity and the fact that Defendant never reached the Gus Young area. Also, Defendant argues that the police report fails to indicate when the CIs got their information, and that information might have been stale and therefore not usable. In short, Defendant contends that the officers failed to make any observations that would provide a reasonable basis to suspect that criminal activity was afoot.

On the other hand, the government argues that the CI's tips were amply corroborated by the officer's observations during surveillance, namely (1) they confirmed Defendant's identity and the fact that he was driving a rental car and (2) he made frequent "short" stops while traveling towards the Gus Young area. The government argues that the receipts, rental car agreement, and the cell phone found in Defendant's car further corroborate the CI's tips. The government contends that the tips were based on current information because they described a recent[7] trip Defendant made to Houston. (Tr. 55). Finally, the government relies on the officer's testimony that the CIs had

---

[6] Although information found after the stop is not in question here, the crux of the CIs information is that Defendant trafficked a large quantity of cocaine (Tr.6). The reliability of the CIs in this situation is called into question by the fact that no cocaine was found (either in Defendant's car or his house). Conversely, marijuana, a completely different substance was found at Jackson's house and in his car.

[7] Tr.p.57. The Court agrees with the government on this issue.

4

provided prior reliable information in resulting in felony arrests in other cases.

Having carefully considered the evidence and the arguments, the court agrees with Defendant that the tips provided by the CIs were not sufficiently corroborated under the circumstances of this case and that the arresting officers did not have specific articulable facts to believe that criminal activity was occurring when the stop was initiated. Basically, the officers merely identified the Defendant and the fact that he was driving a rental car in a westerly direction. During the three days that the Defendant was placed under surveillance, the officers only saw Defendant make one trip. Therefore the CI's tip that Jackson made narcotic drop-offs in the Gus Young area on a daily basis was not corroborated. Furthermore, when the Jackson was being followed on June 20, the officers did not witness the Defendant engage in any activity that was reasonably suspicious of being criminal in nature[8](Tr. 66-67). Indeed, the officers were unable to get close enough to observe "any hand-to-hand transactions or anything like that." (Tr.26). The officers did not confirm that the Defendant was traveling to a residence in the Gus Young area, where he was supposedly going to drop off narcotics. Detective White conceded that they did not stop the Defendant for a traffic violation, instead their sole objective was to make an investigatory stop. (Tr. 62).

In *U.S. v. Scott*, the informant's tips alone were enough to establish reasonable suspicion. 2006 U.S. Dist. LEXIS 16102. *See also U.S. v. Edwards*, 1999 U.S. Dist. LEXIS 8969 (finding the

---

[8]Nevertheless, courts have traditionally given due deference to the experience of officers in identifying a number of factors that although by insufficient by themselves to suggest illegal activity, taken together are indicia of illegal acts. *Alfred v. Collins*, 2006 U.S. Dist. LEXIS 11105. ATF Agent Ladner has had seven (7) years experience working with narcotics related crimes and his inferences made about Jackson's short stops being indicia of drug activity(Tr. 5,9) do carry weight, but are not conclusive alone. The decision to make the investigatory stop was not made by Agent Ladner, but instead made by Detective White (Tr. 33). Moreover, the officers could recall only two stops with any certainty and they conceded they were not able to view anything suspicious. Exercising its discretion, the court finds that the observations made by the officers are not sufficient to create reasonable suspicion.

specific information given the detectives had enough particularity that corroboration of that information was sufficient to establish reasonable suspicion). However, that case is distinguishable because more specificity was given by the informants as to what time the suspect would arrive at a specified location and that specific information was corroborated. In this case, Jackson's action of driving toward the Gus Young area, is not conclusive evidence of that area being his final destination. The government's argument on this point is not persuasive. Furthermore, the government's argument relative to the evidence found post-stop has no bearing on the officers suspicions at the time of the stop. Thus, the court finds the CI's tips were too non-specific and uncorroborated to provide reasonable suspicion of criminal activity.

Since the court finds that the officers lacked reasonable suspicion to justify the investigatory stop, the fruits of the search of both Defendant's car and subsequently his house are inadmissable.

Accordingly, the Defendant's Motion to Suppress (Doc. 11) is hereby GRANTED.

Baton Rouge, Louisiana, May 30th, 2008

JAMES J. BRADY, DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA